## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**CITIZENS ALERT REGARDING**              )
**THE ENVIRONMENT,** *et al.*             )
                                          )
                    **Plaintiffs,**       )
                                          )
            **v.**                        )        **Civil Action No.  04-1667 (ESH)**
                                          )
**MIKE LEAVITT,** *et al.*                )
                                          )
                    **Defendants.**       )
_____)

## MEMORANDUM OPINION

Presently before the Court is defendants' motion to dismiss plaintiffs' (collectively

"CARE") complaint for lack of subject matter jurisdiction on the grounds that plaintiffs lack

standing and their suit is moot.  Because the defendant Agency has already disbursed all grant

funds, and therefore no remedy is available to plaintiffs, defendants' motion is granted.


## BACKGROUND

In this suit, plaintiffs seek injunctive and declaratory relief against defendants, who are

the EPA Administrator, its regional Administrator (collectively "the Agency"), and the Chairman

of the Jefferson Township Sewer Authority ("the Sewer Authority") in Lackawanna County,

Pennsylvania.  Plaintiffs identify purported flaws under the National Environmental Policy Act

("NEPA") in the Agency's Environmental Assessment and its Finding of No Significant Impact

("FONSI") concerning the sewer project recently built in Jefferson Township near the Moosic

Mountain Barrens ("the project").  The chief problem they isolate is the Agency's purported

"failure to consider the secondary and cumulative impacts that will be spurred by construction of

a sewer pipeline, particularly in the undeveloped Moosic Mountain barrens."  (Pls.' Opp'n at 7.)

They contend such errors, if corrected, would necessitate inclusion of ameliorative conditions in

a $1.7 million federal grant that supported the project.  (Compl. ¶¶ 36-57; Pls.' Opp'n at 18.)

This sewer project has generated substantial litigation in this Court, as well as others.    In

1995 the Honorable Gladys Kessler enjoined federal defendants from moving ahead with

development plans related to it until they complied with NEPA.  *See CARE I*, 1995 U.S. Dist.

LEXIS 18619, at *16-36 (D.D.C. Dec. 8, 1995).  Subsequently in 2003, plaintiffs' motions for a

preliminary injunction and summary judgment to stop the project and its funding were denied,

because, *inter alia*, no major federal action had yet occurred -- the Agency's EA review, which is

a prerequisite to issuing a federal grant, *see* 42 U.S.C. 4332(2)(C), was ongoing -- and therefore

there was nothing for this Court to enjoin pursuant to NEPA.  *See CARE II*, 259 F. Supp. 2d 9,

20-22 (D.D.C. 2003).  The Circuit Court affirmed this Court's reasoning, holding that "[u]ntil

EPA completes its [NEPA] review and reaches a decision, there has been no final agency action

within the meaning of 5 U.S.C. § 704 (2004) and the matter is not ripe for judicial review."

*CARE III*, 102 Fed. Appx. 167, 168 (D.C. Cir. 2004).

Following the Circuit's decision, the Agency completed its EA of the sewer project and

signed the final FONSI on August 6, 2004, a copy of which the Agency sent to plaintiffs, as well

as others who had commented on the project.  On August 25, the Agency executed a grant award

offer to the Sewer Authority, which the latter accepted on September 7.  The Agency, based on

an intervening inspection showing that the project was between ninety-five and ninety-eight

2

percent complete, disbursed ninety percent of the $1.7 million grant on September 27.  Following

notification that the project was entirely complete (absent a few minor punchlist items), the

Agency authorized disbursal of the remaining ten percent on November 9.  (*See* Defs.' Mot. at 7

and sources cited therein.)  At this juncture, the federal grant has been paid in full and the locally-

administered sewer project is complete and operational.  (*See* Defs.' Mot. Ex. 9.)


## ANALYSIS

Defendants submit that this Court lacks subject matter jurisdiction over this suit for two

reasons.  First, they contend that the suit is moot because the project has been completed and the

grant funds have been disbursed.  Second, they argue that plaintiffs lack standing both because

there is no causation between the federal grant and plaintiffs' purported injuries and because

plaintiffs' injuries are not remediable through this suit.

Plaintiffs, however, object that the Court may not rule on defendants' Fed. R. Civ. P.

12(b)(1) motion because it relies on disputed issues of fact.  (Pls.' Opp'n at 3-5.)  A complaint

should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of

facts  in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957).  Although all reasonable inferences and all factual doubts must be resolved in

favor of plaintiffs, *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir. 1984) (en

banc), plaintiffs have not presented any disputed issues of fact relevant to the jurisdictional

questions before the Court.  The most they argue is that it is disputed whether the Agency

"retains the ability, if directed by the Court, to redress the injury to plaintiffs notwithstanding

disbursal of the grant and project completion."  (Pls.' Opp'n at 5.)  They object that, without

discovery and production of the administrative record, the Court cannot resolve this purported issue of fact.  (*Id.*)

Plaintiffs' argument fails, for the issue they raise is a question of law.  Production of the administrative record and discovery would not shed light on the question of whether the Agency, as a matter of law, may retroactively add conditions to or even rescind its grant to the Sewer Authority.  Such authority either exists by virtue of statute, the existing terms of the grant, or some other legal source, or it is nonexistent.  Neither production of a record detailing the agency's analysis of the project's environmental effects on the Moosic Mountains and other Scranton environs or any other type of discovery would clarify this legal question.

As defendants rightly note, this Court has an "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  (Defs.' Reply at 4.)  In determining whether it has jurisdiction, the Court may, as it sees fit, look beyond the allegations of the complaint to extra-pleading material.  *See Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); *see also Scolaro v. D.C. Board of Elections and Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir.1992)); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir.1987).  The Court therefore will exercise its discretion to examine the statutes governing the Agency and the terms of the grant itself in order to resolve the threshold jurisdictional questions raised by the defendants.

I.       **Mootness**

For this Court to rule on plaintiffs' complaint, the suit must present a live case or controversy. "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)). Where intervening events preclude the Court from granting plaintiffs any effective relief, even if they were to prevail on their underlying claim, the Court must dismiss a suit as moot for want of subject matter jurisdiction. *Church of Scientology v. United States*, 506 U.S. 9, 11 (1992). *See, e.g.*, *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982); *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C. Cir. 1996).

Plaintiffs' point is well taken that "any effective relief" encompasses acts that may not necessarily undo a fait accompli, but that may serve to mitigate it. *See Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002). (Pls.' Opp'n at 6.) However, unlike the cases relied on by plaintiffs, this case is not amenable to pragmatic relief such as allowing more salmon to spawn in a subsequent year, *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988), creating replacement nesting areas for birds, *Cantrell v. City of Long Beach*, 241 F.3d 674, 678-79 (9th Cir. 2001), or undertaking a "direct species population intervention." *Alexander*, 303 F.3d at 1066. Unlike endangered species or major projects on federal lands, this local Pennsylvania sewer project is not automatically subject to NEPA. *See CARE II*, 259 F. Supp. 2d at 15-16. The only manner in which the Agency or this Court could

have dictated the relief plaintiffs now seek under NEPA would have been for the Sewer

Authority to decide to accept a grant subject to such conditions.  *See id.* at 16; *see also CARE III*,

102 Fed. Appx. at 169.  Thus, unlike the controversies confronting the Ninth Circuit in the above

cases, the instant matter does not give a regulatory authority a later opportunity to correct a

supposed previous error, for example, by issuing fishery regulations for a subsequent season that

account for an earlier inadequacy.  *See Gordon*, 849 F.2d at 1245.

Rather, this controversy is governed by principles of contract law, and the Sewer

Authority was offered and accepted the grant on the basis of certain conditions, which this Court

may not retroactively revisit.  As a general matter,

> legislation enacted pursuant to the spending power is much in the nature of a
> contract:  in return for federal funds, the States agree to comply with federally
> imposed conditions.  The legitimacy of Congress' power to legislate under the
> spending power thus rests on whether the State voluntarily and knowingly accepts
> the terms of the "contract."  There can, of course, be no knowing acceptance if a
> State is unaware of the conditions or is unable to ascertain what is expected of it.
> Accordingly, if Congress intends to impose a condition on the grant of federal
> moneys, it must do so unambiguously.  By insisting that Congress speak with a
> clear voice, we enable the States to exercise their choice knowingly, cognizant of
> the consequences of their participation.

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (internal citations and

footnote omitted); *accord Virginia Dep't of Educ. v. Riley*, 23 F.3d 80, 85 (4th Cir. 1994)

("[A]gencies of the federal government cannot be permitted freely to change funding conditions

right in the middle of a multi-year grant period.  Allowing such mid-grant shifts would enable the

federal government to overlook its obligation of fair dealing with the states in the administration

of funding programs.  This obligation has been clearly stated with respect to Congress, *see*

*Pennhurst*, 451 U.S. at 17, and it is equally applicable to the agencies charged with administering

federal grant programs.").

The same principles govern the Agency's contract with the Sewer Authority.  Unless the

Sewer Authority explicitly agreed to be bound by NEPA or to comply with conditions the

Agency recommended as a result of its Environmental Assessment, the Authority had no such

compliance duty.  *See CARE III*, 102 Fed. Appx. at 169 (holding that "[n]onfederal participants

in federal actions need not themselves comply with NEPA") (citing *Macht v. Skinner*, 916 F.2d

13, 18 (D.C. Cir. 1990)).  The grant agreement does not include any catchall clause allowing the

Agency to add conditions to the agreement retroactively.  It simply provides that "[t]his

agreement is subject to applicable U.S. Environmental Protection Agency statutory provisions

and assistance regulations."  (Defs.' Mot. Ex. 5.)  Thus, unless those statutes and regulations

provide the Agency with the powers the plaintiffs seek to compel it to invoke, plaintiffs' suit is

moot, because the grant payments and the conditions under which the Authority accepted them

are a done deal that may not be revisited.

Plaintiffs direct the Court's attention to the Agency's powers, pursuant to 40 C.F.R.

§ 35.965, to terminate or annul grants, debar the grantee from future federal assistance, and the

like.  (*See* Pls.' Opp'n at 9.)  But those powers are explicitly limited to circumstances where the

"*grantee* has failed to comply with any provision of this subpart."  40 C.F.R. § 35.965 (emphasis

added).  Plaintiffs' complaint does not even allege that the Sewer Authority has breached

particular duties under Subpart E, which governs grants for construction of treatment works

under the Clean Water Act.  Rather, as plaintiffs admit, they take issue with the *Agency's*

compliance with NEPA, not the Sewer Authority's.  (*See* Pls.' Opp'n at 7 ("[T]he primary thrust

7

of Plaintiffs' NEPA challenge and the reason why the Plaintiffs are injured by the *EPA's* noncompliance with NEPA is the *EPA's* failure to consider the secondary and cumulative impacts that will be spurred by construction of a sewer pipeline.") (emphasis added).)  Thus, the Agency's enforcement powers under section 35.965 do not enable it to retroactively change the terms of the grant in order to afford the relief that plaintiffs seek.

Plaintiffs also point to 40 C.F.R. § 6.512, which provides for Agency monitoring of "mitigation measures and other grant conditions identified in the [FONSI]," and for enforcement actions where "the *grantee* fails to comply with grant conditions" (emphasis added).  Because the FONSI at issue contains no grant conditions and sets forth no mitigation measures (*see* Defs.' Mot. Ex. 2), this regulation likewise provides no basis for amending the grant to provide the relief sought here.  Again, there is no allegation that the Sewer Authority as grantee has failed to meet the conditions of the grant as envisioned by 40 C.F.R. § 6.512; rather, plaintiffs' "primary thrust" is against the Agency instead.  Where the alleged wrongdoing is the Agency's failure to meet its obligations under NEPA, the principles of *Pennhurst* do not permit the other, innocent contracting party to have the grant retroactively rewritten to its detriment on account of the government's purported mistakes in entering into the contract without meeting *the Agency's* obligations.  *See Pennhurst*, 451 U.S. at 17.

The result here might have been different if the grant offer had been withdrawn and reissued subject to plaintiffs' proposed conditions prior to its acceptance.  But plaintiffs failed to seek a restraining order or a preliminary injunction to arrest the grant-making process before the Sewer Authority accepted the government's grant offer.  As stated, the Authority has long since accepted the Offer, and the grant has been paid in full.  Indeed, if plaintiffs are correct that the

8

Agency did not comply with NEPA, they could have moved in early November for emergency

relief to argue that the Agency must be precluded from finalizing payment of the second grant

installment, which was processed on November 9, 2004.  (Defs.' Mot. Ex. 7.)  The fact that in

*CARE II* the Court was unable to enjoin the *Sewer Authority's* construction of the project did not

make it futile to move in the instant proceeding to enjoin the *Agency* from disbursing a grant

allegedly granted in violation of NEPA.  *Compare CARE II*, 259 F. Supp. 2d at 22.  (*See* Pls.'

Opp'n at 12-13; Defs.' Reply at 9-10.)  In short, plaintiffs could have been afforded a remedy,

and mootness would thereby have been avoided, had they diligently sought a restraining order

prior to the Agency's finalizing grant payments to the Authority.  But they did not, and *Pennhurst*

and its progeny preclude this Court from inflicting unenvisioned grant conditions on the

Authority at this late date.  Thus, plaintiffs are not entitled to the remedy they seek, and their suit

is moot.

Plaintiffs argue that their suit falls within the mootness exception for actions that are

capable of repetition but evade review.  *See Weinstein v. Bradford*, 423 U.S. 147, 148-49 (1975).

(Pls.' Opp'n at 11-12.)  This exception applies where "(1) the challenged action was in its

duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a

reasonable expectation that the same complaining party would be subjected to the same action

again."  *Id.* at 149.  Even assuming *arguendo* that plaintiffs might again challenge the Agency's

NEPA compliance, plaintiffs have failed to show that the instant payment process is likely to

occur in the future on as short a timetable as was present in this case.  The fact that in this rare

instance, a local government body received a grant for a project that was all but complete even

absent federal funding, and which grant therefore could be paid in full within three months, does

not establish that this short timeframe is likely to recur in litigation in which plaintiffs are

involved.  Rather, in any future litigation the timetable of the normal grant-awarding process is

likely to be operative, and thus, litigation may be brought prior to the final disbursement of the

federal grant monies.  (*See* Defs.' Mot. at 10.)  In the future, plaintiffs are likely to have more

than adequate time to fully litigate a suit against defendants challenging their NEPA compliance,

and therefore, this suit does not merit the application of the *Weinstein* exception.  *Accord*

*Northwest Res. Info. Ctr., Inc. v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1060, 1070 (9th Cir.

1995) (holding that a mooted challenge to a permit valid for less than one year did not "evade

review" because a subsequent permit was of more than adequate duration to allow for full

litigation of the issues).

      In sum, this Court is unable to grant plaintiffs any effective relief, and as a result, their

suit is therefore moot because the Court lack jurisdiction.

## II.    Plaintiffs' Standing

      As an alternative basis for its dismissal of plaintiffs' suit, the Court holds that plaintiffs

lack standing, and therefore, the Court has no subject matter jurisdiction to hear this case.

      To establish that this Court has jurisdiction to hear plaintiffs' claims, plaintiffs must show

that they have standing to raise them.  *See Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663,

666 (D.C. Cir. 1996) (en banc).  Standing exists where (1) a plaintiff has suffered a concrete and

particularized injury or threat of injury, (2) that injury can fairly be traced to the challenged

action of the defendant ("causation"), and (3) the relief sought will likely alleviate plaintiff's

alleged injury ("redressability").[1]/  *See id.* at 663-64.  Defendants contend that plaintiffs have failed to show both (2) or (3).  (*See* Defs.' Mot. at 8-9.)

The same reasoning underlying the Court's mootness decision compels the suit's dismissal for lack of standing.  For the reasons stated, plaintiffs' alleged injuries will not be redressed through the relief sought, because such relief cannot be granted pursuant to the now-final terms and conditions of the grant and because the Sewer Authority has not done anything wrong that would warrant enforcement actions against it.  Plaintiffs therefore fail the redressability prong of the standing analysis.

Furthermore, plaintiffs cannot show that their injury is fairly traceable to the Agency's purportedly inadequate NEPA review.  As this Court previously held, and as this Circuit affirmed, completion of the sewer project was proceeding apace regardless of the outcome of the Agency's Environmental Assessment.  *See CARE II*, 259 F. Supp. 2d at 21-22; *CARE III*, 102 Fed. Appx. at 169 ("While the Township arguably jeopardizes its federal funding by proceeding with construction before EPA has reached a decision on the grant request, because this course of action limits the Township's ability to make alterations to the project that might be necessary to secure EPA's approval, nothing in NEPA prevents the Township from taking that risk.").  Thus, plaintiffs would have sustained their alleged injuries -- *e.g.*, anticipated increased development in the Moosic Mountain Barrens -- notwithstanding the Agency's purported noncompliance with

---

[1]/  Citing the Ninth Circuit, *see Cantrell*, 241 F.3d at 682, plaintiffs contend that as litigants accorded procedural rights, the standing showing they must make is "relaxed."  (Pls.' Opp'n at 16.)  However, this Circuit has unequivocally held that such plaintiffs have "never [been] freed" from the "irreducible" standing requirements of showing causation and redressability.  *See Florida Audubon Soc'y*, 94 F.3d at 664.  Accordingly, the Court proceeds with its standing analysis.

NEPA, and thus, their claim of injury is simply too attenuated to be fairly traceable to any action

by defendants.  *See Florida Audubon Soc'y*, 94 F.3d at 670 (rejecting a similarly "protracted

chain of causation") ("The greater number of uncertain links in a causal chain, the less likely it is

that the entire chain will hold true.").  In sum, in addition to failing to show redressability,

plaintiffs also cannot show causation, and they therefore lack standing to bring this suit.  For this

reason as well, the Court lacks subject matter jurisdiction.


## CONCLUSION

While only one of the above-discussed issues would be sufficient to deprive this Court of

subject matter jurisdiction, in fact there are three independent reasons why the Court may not

hear this case.  The suit is moot, plaintiffs cannot demonstrate causation between their injuries

and the challenged action sufficient to establish standing, and plaintiffs cannot show that their

injuries are redressable so as to afford them standing.  It therefore cannot proceed, and

defendants' motion is granted and this case is dismissed with prejudice.  An appropriate Order

accompanies this Memorandum Opinion.


_____ s/ _____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  January 21, 2005